**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SOUTHERSBY DEVELOPMENT CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-1248 |
| | ) | |
| | ) | |
| TOWNSHIP OF SOUTH PARK, MICHAEL | ) | Judge Nora Barry Fischer |
| G. WARGO, in his individual and official | ) | |
| capacity, HERBERT, ROWLAND & | ) | |
| GRUBIC, INC., AND SCOTT | ) | |
| SWANSINGER, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

### I.      Introduction

Presently before the Court are two Motions to Dismiss filed by Defendants Township of South Park ("the Township") and Michael Wargo ("Wargo") (collectively "Township Defendants"), (Docket No. 32), and Defendants Herbert, Rowland & Grubic, Inc. ("HRG") and Scott Swansinger's ("Swansinger") (collectively "HRG Defendants"), (Docket No. 36). The Township and HRG Defendants submitted briefs in support, (Docket Nos. 33, 42), and Plaintiff filed Responses and Briefs in opposition, (Docket Nos. 42-45). The HRG Defendants then filed a Reply. (Docket No. 48).

The Court has heard Argument from the parties, (Docket No. 52), and already dismissed Plaintiff's RICO claims by Memorandum Order, (Docket No. 59). The Motions otherwise are ripe for disposition.

## II.     Relevant Facts[1]

This matter involves a dispute between the real estate developer Plaintiff, the Township and its manager, Wargo, the engineering firm HRG, and its engineer-in-training, Swansinger. Plaintiff owns real property in the Township known as the Della Strada subdivision, which was purchased to be developed and then sold as individual lots for profit. (Docket No. 28 at ¶¶ 11-12). Plaintiff is developing Della Strada in two phases: Phase 1 and Phase 2. (*Id.* at ¶ 11).

Plaintiff and the Township are parties to two agreements, the Subdivision Development Agreement ("SDA") and the Erosion Sedimentation Control and Storm Water Facilities Maintenance and Monitoring Agreement ("ECA"), both of which were negotiated with the assistance of counsel. (*Id.* at ¶¶ 27, 37); (Jan. 12, 2015 Trans. at 6:6-7:1).[2] Paragraphs 19 and 24 of the SDA, Paragraph 5d of the ECA, and Township Ordinance 118.60.3 require Plaintiff to post a cash escrow with the Township. (Docket No. 28 at ¶ 29). The Township, as escrow agent, was to use the funds for payment of inspection services rendered by the Township Engineer, Swansinger. (*Id.* at ¶¶ 18, 27). Neither Swansinger nor HRG are parties to either agreement, but HRG represents the Township, and Swansinger is designated as the Township Engineer. (*Id.* at ¶ 18).

As this Court has previously written, the central disputes here include fee disputes for alleged excess billing by HRG and the Township Solicitor, Paul Gitnik, Esq. ("Gitnik"), and conflicting interpretations of Pennsylvania's Municipal Planning Code. (Docket No. 59 at 9). Plaintiff contends that Swansinger falsified digital photographs to support his fraudulent and/or excess bills. (Docket No. 28 at ¶ 224). In turn, it claims that the Township Defendants approved the fraudulent invoices and facilitated payment from the escrow account over its objections. (*Id.*

---

[1] As the Court writes for the parties, it does not set forth an exhaustive review of the allegations in Plaintiff's Amended Complaint, which consists of 414 separate paragraphs. (Docket No. 28).

[2] The official transcript of the proceeding has not been prepared; therefore the Court relies on its rough-draft copy.

at ¶ 229). Further, Plaintiff alleges that the Township Defendants actively concealed said fraudulent scheme by withholding the identified invoices despite Plaintiff's demands for same and creating false escrow activity statements. (*Id.* at ¶¶ 230-31).

Plaintiff's remaining claims include violations of its substantive due process, Equal Protection, and First Amendment rights under the Pennsylvania and United States Constitutions. (Docket No. 28). It also alleges state fraud, civil conspiracy, breach of contract, negligence, unjust enrichment, breach of fiduciary duty, and aiding and abetting claims. (*Id.*). The HRG Defendants moved to dismiss all of the federal question claims and request that this Court remand the state law claims to state court. (Docket Nos. 36, 37, 48). The Township Defendants seek dismissal of all claims other than the breach of contract claims. (Docket Nos. 32, 33). For the reasons discussed below, the Motions are denied, in part, and granted, in part.

### III.    Standard of Review

A motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6) challenges the legal sufficiency of a complaint. The Supreme Court of the United States has held that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original).

The Court must accept as true all well-pleaded facts and allegations and must draw all reasonable inferences therefrom in favor of the plaintiff. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555. As the Supreme Court made clear in *Twombly*, however, the "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has subsequently broadened the scope of this requirement, stating that "only a complaint that states a plausible claim for relief survives a motion to

dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

After *Iqbal*, the United States Court of Appeals for the Third Circuit explained that a district court must conduct the following analysis to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 675, 679); *see also Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011), *cert. denied*, 132 S.Ct. 1861 (Apr. 2, 2012); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

*Twombly* and *Iqbal* have not changed the other pleading standards for a motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6), and the requirements of FED.R.CIV.P. 8 must still be met. *See Burch*, 662 F.3d at 220. Rule 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555 n.3 (internal alterations, citations, and quotations omitted). The Supreme Court has explained that a complaint need not be "a model of

the careful drafter's art" or "pin plaintiffs' claim for relief to a precise legal theory" so long as it states "a plausible 'short and plain' statement of the plaintiff's claim." *Skinner v. Switzer*, 562 U.S. 521 (2011); *see also Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309, 1322 n.12 (2011) (emphasizing that "to survive a motion to dismiss, respondents need only allege 'enough facts to state a claim to relief that is plausible on its face'") (quoting *Twombly*, 550 U.S. at 570)). With respect to allegations of fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

In deciding a Rule 12(b)(6) motion to dismiss, the Court generally may consider "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). A court may, however, "look beyond the complaint to matters of public record, including court files and records, decisions of government agencies and administrative bodies, and documents referenced in the complaint or essential to a plaintiff's claim which are attached to either the [c]omplaint or the defendant's motion." *Spence v. Brownsville Area Sch. Dist.*, 2008 WL 2779079, at *3 (W.D. Pa. July 15, 2008) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

## IV. DISCUSSION

### A. Constitutional Claims

Plaintiff sets forth claims pursuant to 42 U.S.C. § 1983 for alleged violations of: substantive due process; equal protection of the laws; and retaliation for invoking protections secured by the First Amendment. (Docket No. 28). It also brings parallel claims under the Pennsylvania Constitution. (*Id.*). The HRG and Township Defendants move to dismiss all of the constitutional claims. (Docket Nos. 32, 33, 36, 37).

Section 1983 provides that "every person who, under color of [state law] subjects, or causes to be subjected, any . . . person within the jurisdiction [of the United States] to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law [or] suit in equity." 42 U.S.C. § 1983. In other words, section 1983 does not create substantive rights but provides a vehicle by which violation of rights created by the Constitution or federal law may be vindicated. *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979); *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 907 (3d Cir. 1997). To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements: 1) the alleged misconduct was committed by a person acting under color of state law; and 2) the defendants' conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 330–31 (1986).

### 1. Whether the HRG Defendants Are State Actors

As a threshold matter, the Court addresses the HRG Defendants' argument that HRG, as a private corporate entity, and Swansinger, as a private individual, are not state actors and did not act under color of state law. (Docket No. 37 at 21-22). The Amended Complaint avers that "[a]t all times relevant hereto, the actions and conduct of Wargo, HRG and Swansinger were under the color of state law." (Docket No. 28 at ¶ 211). Further, Plaintiff claims that "through a formal procedure or working relationship with the Township [Defendants]," the HRG Defendants "were draped with the power of the state." (Docket No. 45 at 16). It contends that the HRG Defendants "acted in concert with, and took orders directly from, the Township." (Docket No. 45 at 15-18) (citing Docket No. 44 at ¶¶ 10, 47-49).

Accepting Plaintiff's allegations as true and drawing all reasonable inferences in the light most favorable to the plaintiff, as this Court must, it is plausible that the HRG Defendants acted

under color of state law. At a minimum, Plaintiff has alleged that HRG and its employee, Swansinger, as the designated Township Engineer, conspired with the Township to excessively bill for their engineering services. (*See* Docket No. 28 at ¶¶ 64, 89, 90, 114, 116, 117). In furtherance of the alleged conspiracy, Plaintiff avers that Swansinger falsified digital photographs to support HRG's bills, which were submitted to the Township. (*Id.* at ¶¶ 134-38, 153-56). Further, Plaintiff contends that Wargo instructed HRG to provide full-time inspection services at the Della Strada subdivision and knowingly permitted HRG to submit the false and fraudulent invoices to the Township. (*Id.* at ¶ 228). The Amended Complaint alleges that HRG and/or the Township intentionally made misrepresentations to Plaintiff with respect to these invoices, that Plaintiff objected to these invoices, and Plaintiff was subject to disparate treatment compared to other similarly situated developments in the Township. (*Id.* at ¶ 157).

In this Court's estimation, taking Plaintiff's allegations as true, it is plausible that the HRG Defendants played a role, either directly or indirectly, in causing the alleged constitutional harms suffered by Plaintiff. Where a plaintiff has claimed that similar engineer defendants: "(1) prohibited Plaintiff from accessing the public water system, (2) intentionally and arbitrarily refused to undertake any actions in conformity with the Berks County Court of Common Pleas Consent Order, and (3) refused to start the necessary process with the PADEP in violation of the Consent Order," such claims have survived a motion to dismiss. *Perano v. Twp. of Tilden*, 2010 WL 1462367, at *5 (E.D. Pa. Apr. 12, 2010) *aff'd*, 423 F. App'x 234 (3d Cir. 2011). Another Court in this district denied a motion to dismiss an engineer defendant because "[t]he plaintiffs allege[d] that the Engineer defendant is a person acting under color of state law, who irrationally singled them out for disparate treatment, and conspired with the other defendants and Carnegie Borough to prevent them from occupying their home, resulting in a temporary loss of the use and enjoyment of their property, for which the plaintiffs suffered damages." *Prosperi v. Twp. of*

*Scott*, 2006 WL 2583754, at *8-9 (W.D. Pa. Sept. 7, 2006) (J. Cercone) (internal docket citations omitted).

Accordingly, in light of this authority and the governing legal standard as to a motion to dismiss, the HRG Defendants' Motion to Dismiss is denied. Said Defendants can renew this argument at the summary judgment stage.[3]

## 2. Substantive Due Process

"To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the . . . due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 536 F.3d 200, 219 (3d Cir. 2008) (citing *United Artists Theatre Circuit v. Twp. of Warrington*, 316 F.3d 392, 400-02 (3d Cir. 2003)). The Court addresses the parties' arguments as to these requirements, in turn.

Defendants argue that Plaintiff has failed to allege the loss of a fundamental property right. (Docket No. 32 at 4); (Docket No. 36 at ¶ 51); (Docket No. 37 at 25-26). Plaintiff responds that the HRG Defendants "interrupted, interfered with, or impinged upon Plaintiff's property rights," *i.e.* the real property it is seeking to develop in the Township. (Docket No. 44 at ¶ 57). Further, it argues that it does not need to show that the interest was terminated or that the development was rendered impossible. (Docket No. 43 at 11). The Court agrees.

As explained by the late Magistrate Judge Amy Reynolds Hay in prior litigation involving another of Plaintiff's development disputes, "[i]t is undisputed that the Plaintiff's ownership of real property satisfies the first element." *Southersby Devel. Corp. v. Boro. of Jefferson Hills, et al.*, No. 09-208 Docket No. 32 (W.D. Pa. Apr. 20, 2010) (Am. Memo. Opn.) (citing *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 600 (3d Cir.

---

[3] For the remainder of this Memorandum Order, any reference to unqualified "Defendants" will be a reference to all Defendants, unless noted otherwise.

1995) *abrogated on other grounds by United Artists*, 316 F.3d 392 (recognizing that "ownership is a property interest worthy of substantive due process protection"). Defendant's Motion to Dismiss is denied to the extent that Defendants argue that Plaintiff does not have a sufficient property interest. The Court now continues its analysis.

The Township Defendants further contend that Plaintiff has "failed to allege any facts to establish the egregious official conduct needed to meet the 'shocks the conscience' standard for a substantive due process claim." (Docket No. 33 at 12). Plaintiff avers that "[i]t is axiomatic that land use decisions fall within this standard when government action to restrict use is 'arbitrary and irrational.'" (Docket No. 43 at 12). As support, it argues that the Amended Complaint alleges corruption or self-dealing. (*Id.*).

The test to determine whether official conduct shocks the conscience is "not precise" and "varies depending on the factual context." *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004) (quotations omitted). To this end, conduct such as self-dealing, corruption of government officials, intentional bias against an ethnic group, interference with constitutionally protected activities or other sufficiently egregious conduct has been held to constitute a violation of substantive due process. *Id.* However, such allegations must be supported by facts. *Southersby v. Jefferson Hills*, No. 09-208, Docket No. 32 at 7-9 (citing *Eichenlaub*, 385 F.2d at 286). "The point at which conduct becomes conscience-shocking for constitutional purposes is a question of law for a court to decide, not a question of fact amenable to resolution by a jury." *Whittaker v. County of Lawrence*, 674 F. Supp. 2d 668, 698 (W.D. Pa. Dec. 7, 2009) (citations omitted); *see also Cranberry Promenade, Inc. v. Cranberry Twp.*, 2011 U.S. Dist. LEXIS 149222, 71 (W.D. Pa. Dec. 29, 2011).[4]

---

[4] The Court acknowledges that it has previously dismissed a substantive due process claim at this stage. *Whittaker v. Cnty. of Lawrence*, 674 F. Supp. 2d 668, 672 (W.D. Pa. 2009) *aff'd*, 437 F. App'x 105 (3d Cir. 2011). However, as

In its 2009 case before Judge Hay, Plaintiff's substantive due process claim was dismissed at the motion to dismiss stage. *Southersby v. Jefferson Hills*, No. 09-208 Docket No. 32. While many of the paragraphs in the instant Amended Complaint contain substantially similar, if not identical, language, the Court distinguishes the two matters. Here, the specific factual allegations supporting the claimed fraud and self-dealing by Defendants arguably rise to the level of "conscience shocking." To this end, Plaintiff contends that it has been charged for services that were not performed by HRG and Swansinger. (*See, e.g.* Docket No. 28 at ¶ 215). It supports this position with its expert report from bit-x-bit[5] showing that Swansinger altered the metadata in his digital photographs to conform said photographs with the dates and times of the alleged overcharged services on the disputed HRG invoices. (*Id.* at ¶ 155). Certainly, Plaintiff's allegations that the Township knowingly approved said false invoices could shock the conscience. (*Id.* at ¶¶ 228-31). If true, such inflated engineering bills would inure to the benefit of HRG Defendants. Moreover, Plaintiff's allegations of conspiracy between HRG and Township Defendants to intentionally inflate Plaintiff's bills as retaliation for its complaints may rise to the level of egregious behavior by government officials, their agents, and co-conspirators. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (citations and quotations omitted) ("[T]he Due Process Clause was intended to prevent government officials "from abusing [their] power, or employing it as an instrument of oppression.").

---

was the case in *Cranberry Promenade*, this matter is distinguishable from *Whittaker*. In *Whittaker*, the Court had the "benefit of a complete record which was developed in state proceedings arising from a taking of property after the defendants' exercise of eminent domain power." *Cranberry Promenade, Inc. v. Cranberry Twp.*, 2010 WL 653915, at *5 (W.D. Pa. Feb. 22, 2010) (citing *Whittaker*). No such record is present here. In fact, whether Defendants actually violated the Municipal Planning Code remains an open question, as on January 12, 2015, Plaintiff filed a land use appeal related to this development dispute in the Court of Common Pleas of Allegheny County. (*Southersby Devel. Corp. v. Twp. of S. Park*, Docket No. SA-15-39). Based on this Court's research, said appeal remains pending.

[5] Per its website, "bit-x-bit is a computer forensics, data loss prevention and e-discovery consulting firm." *Available at* http://www.bit-x-bit.com/ (last visited Apr. 13, 2015).

While discovery may reveal that this is a "fairly run-of-the-mill dispute between a developer and local government officials," *Cranberry Promenade*, 2011 U.S. Dist. LEXIS 149222, at *71 (citing *Maple Properties, Inc. v. Twp. of Upper Providence*, 151 F. App'x 174, 179 (3d Cir. 2005)), the Court must accept Plaintiff's allegations as true at this juncture. Having done so and for the reasons stated above, the Court denies Defendants' Motions to Dismiss the substantive due process claim.

### 3. Equal Protection

Plaintiff next alleges that it is similarly situated with two developments, Saddle Brook and Brookfield Manor, yet subjected to disparate treatment. (Docket No. 28 at ¶¶ 280-81). Included in its claim is that the Township improperly required it to post a $5,000 maintenance bond. (*Id.* at ¶ 288).

The Township Defendants argue that Plaintiff's Equal Protection claim fails because the Subdivision Development Agreement ("SDA") and Erosion Control Agreement ("ECA") both imposed requirements upon the parties which define the relationship between the Township and Plaintiff. (Docket No. 33 at 14). Moreover, they contend that that the Amended Complaint does not allege that the contracts between South Park and the Brookfield Manor and Saddle Brook subdivisions had similar provisions and requirements.[6] (*Id.*).

Lastly, the Township Defendants argue that the Plaintiff's "class of one" theory fails, because it cannot simultaneously maintain that it is a class of one and allege that the Township had a custom of allowing Wargo to selectively, arbitrarily, and irrationally apply and enforce laws, codes, and ordinances. (*Id.*). The Township Defendants finally contend that the $5,000,

---

[6] These contracts are not presently before the Court.

which was to be placed into an escrow account and to which Plaintiff objects, was contractually required per the ECA.[7] (*Id.* at 14-15).

Plaintiff also pleads an Equal Protection violation of Article I, § 26 of the Pennsylvania Constitution.[8] As the Township Defendants correctly set forth, the Pennsylvania Supreme Court has adopted the thinking of the Supreme Court of the United States in interpreting and applying the Equal Protection provisions of the Pennsylvania Constitution. *St. Margaret Mem'l Hosp. v. Borough Council of Borough of Aspinwall*, 641 A.2d 1270, 1272 (Pa. 1994).

Under the Equal Protection Clause, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1. Yet, this Clause "creates no substantive rights." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). "Instead, it embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." *Id.*

Plaintiff relies on a "class of one" theory, as set forth in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Under such theory, it is Plaintiff's burden to demonstrate that it was "treated differently from others similarly situated and that there was *no rational basis* for such disparate treatment." *Whittaker*, 674 F. Supp. 2d at 691-92 (emphasis in original) (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008). It must show that it was subject to "intentionally different treatment [that] is 'irrational and wholly arbitrary.'" *Eichenlaub*, 385 F.3d at 286 (quoting *Village of Willowbrook*, 528 U.S. at 564)). The Court notes that the Third Circuit has recognized that "[t]he 'irrational and wholly arbitrary' standard is doubtless difficult for a plaintiff to meet in a zoning dispute." *Eichenlaub*, 385 F.3d at 287.

---

[7] The HRG Defendants argue that the Equal Protection claim must be dismissed because they are not state actors and they did not act under color of state law. (Docket No. 36 at ¶¶ 44-46). The Court has already rejected this argument herein. *See* p. 6-8, *supra*.

[8] Section 26 provides that "[n]either the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." PA. CONST. ART. I, § 26.

As set forth in the Amended Complaint and its Exhibits as well as made clear at oral argument, Plaintiff heavily negotiated its contract with the Township. (Docket No. 28); (Jan. 12, 2015 Trans. at 6:9-13, 55:7-14). Despite same, Plaintiff maintains that it is similarly situated to the Saddle Brook and Brookfield Manor developments, as they are also located, albeit partially, in the Township. (Docket No. 28 at ¶ 180). It also avers that the Brookfield Manor and Saddle Brook Subdivisions are similarly situated to Della Strada for the following reasons:

- they are subdivisions developed in phases, which phases are within the same geographical proximity to the Della Strada Subdivision;
- they were all in development in the same or recent time frame;
- they were all residential developments and subject to the same Township Ordinances regulating land development;
- they all required the same public infrastructure improvements, including, but not limited to storm sewers and sanitary sewers;
- they were all subject to progress and final inspections by the Township and its Engineer during construction of the public infrastructure; and,
- they were all overseen or regulated by Wargo and an HRG representative, including Swansinger.

(*Id.*). While discovery may reveal that these two developments are not similarly situated with respect to their relationships with South Park, *i.e.* that they did not have heavily negotiated SDAs as Plaintiff did, the Court cannot make such a determination based on the record at this juncture and must accept Plaintiff's allegations in the Amended Complaint as true. The Court finds that Plaintiff has sufficiently pled that it was similarly situated with the Saddle Brook and Brook Field Manor developments. Thus, the Court's analysis proceeds.

Plaintiff sets forth a litany of alleged unequal and discriminatory actions to which it was subjected, including: unreasonably stringent inspections by the Township and Wargo; excessive inspection, engineering, and municipal legal fees; fraudulent invoices; interference with business and contractual obligations; frivolous complaints to the Allegheny County Conservation

District;[9] intentional delays of the completion report for the Della Strada Phase 1 final plat; and intentional delays for the application for final plat approval of Della Strada Phase 2. (Docket No. 28 at ¶ 281). Plaintiff further contends that the Saddle Brook and Brook Field Manor subdivisions were not subject to any of these actions.

Taking these allegations as true, the Court finds that Plaintiff has adequately pled disparate treatment by Defendants. Thus, the Court denies Defendants' motions to dismiss Plaintiff's Equal Protection claims brought pursuant to both the Pennsylvania and United States Constitutions.

### 4. First Amendment Retaliation

Plaintiff alleges that Defendants retaliated against it based on its protected activity of protesting South Park and HRG's unlawful actions in violation of the First Amendment of the United States Constitution and Article I, §§ 7[10] and 20[11] of the Pennsylvania Constitution. (Docket No. 28 at 99-112). The Township Defendants maintain that they did not retaliate against Plaintiff, as it was provided with opportunities to present its claims of fraud and other matters at meetings and frequently complained and objected during the entirety of the Della Strada project.[12] (Docket No. 33 at 17-18).

To demonstrate a First Amendment retaliation claim, Plaintiff must first show that its conduct was constitutionally protected, *i.e.*, that it was exercising rights protected by the First

---

[9] The Allegheny County Conservation District is an agent for the Department of Environmental Protection Agency. (Docket No. 28 at ¶ 306). Plaintiff alleges that Wargo's frivolous complaints to said District caused it to undergo unnecessary inspections. (*Id.*).

[10] Pursuant to Section 7, "[t]he free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty." PA. CONST. ART. I, § 7.

[11] Section 20 provides that "[t]he citizens have a right in a peaceable manner to assemble together for their common good, and to apply to those invested with the powers of government for redress of grievances or other proper purposes, by petition, address or remonstrance." PA. CONST. ART. I, § 20.

[12] The HRG Defendants deny that they are state actors, alleging that their actions were "the normal activities of a consultant company" and were not retaliatory for Plaintiff's complaints. (Docket No. 37 at 26-27). Once again, this argument was already rejected for the purposes of these Motions.

Amendment of the United States Constitution. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Ambrose v. Township of Robinson, Pa.*, 303 F.3d 488, 493 (3d Cir. 2002) (citing *Bd. of County Comm'rs. v. Umbehr*, 518 U.S. 668, 675 (1996)). Second, it must show that its claimed "protected activity was a substantial or motivating factor in the alleged retaliatory action." *Ambrose*, at 493. The burden then shifts to Defendants who "may defeat the [P]laintiff's case by showing that [they] would have taken the same action even in the absence of the protected conduct." *Id.*; *see also Hill v. City of Scranton*, 411 F.3d 118, 127 (3d Cir. 2005). "[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." *Borough of Duryea, Pa. v. Guarnieri*, — U.S. —, 131 S. Ct. 2488, 2494 (2011) (quotations and citations omitted).

In *Eichenlaub*, the Third Circuit upheld the plaintiffs' First Amendment retaliation claim where they alleged, *inter alia*, violations of their First Amendment and state-law rights when zoning officials:

> [A]pplied subdivision requirements to their property that were not applied to other parcels; . . . pursued unannounced and unnecessary inspection and enforcement actions; . . . delayed certain permits and approvals; . . . improperly increased tax assessments; and . . . maligned and muzzled the Eichenlaubs.

385 F.3d at 286. Here, Plaintiff has pled numerous claims of retaliation as to Phase 1 at paragraph 306 and as to Phase 2 at paragraph 307 of the Amended Complaint. (Docket No. 28 at ¶¶ 306, 307). Such examples include: HRG's threatened opposition at a potential arbitration; assessment of additional solicitor fees; duplicative and full-time engineer inspections; Wargo's frivolous complaints to the Allegheny County Conservation District; refusal to present inquiries to the Board of Supervisors; and intentional delay of the completion report and execution of the final plats for Phases 1 and 2. (*Id.*).

The Court notes that the Amended Complaint as well as the emails and letters attached thereto set forth numerous instances in which Plaintiff made objections and complaints relative to the underlying disputes, both in the form of writings and during its representatives' attendance at Board of Supervisors meetings. (Docket No. 28, *passim*). Said complaints and objections were made by both Plaintiff's counsel and its principals, Tom and Ann Stewart Murphy. (*Id.*, *passim*). Plaintiff has further alleged that Defendants' conduct was taken in "direct retaliation" for its complaints. The timing is such that the actions by the Township Defendants seem to coincide with Plaintiff's complaints. (Docket No. 43 at 16).

The Court notes the Third Circuit's guidance that "it is generally a question of fact whether a retaliatory campaign of harassment has reached the threshold of actionability under § 1983." *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000). Given same and construing the allegations in Plaintiff's favor, the Court finds that Plaintiff has adequately pled First Amendment retaliation claims under the Free Speech and Petition Clauses of the United States Constitution and violations of Article I, §§ 7, 20 of the Pennsylvania Constitution.

### B. State Law Claims

#### 1. Immunity under the Pennsylvania Political Subdivision Tort Claim Act ("PSTCA")

The Township argues that it is immune from Plaintiff's state law claims under the PSTCA, codified at 42 Pa.C.S. §§ 8541, *et seq.*, because the tort claims are based on fraudulent, willful conduct. (Docket No. 33 at 20). The Township Defendants also maintain that the negligent supervision and breach of contract claims are not exceptions to immunity under the PSTCA. (*Id.*).

Plaintiff submits that the Township is not immune from the negligence claim, as the escrow funds are "personal property" within "the Township's possession and control," thereby

falling into one of the enumerated exceptions to immunity under the PSTCA. (Docket No. 43 at 19).

As to the remainder of its state law claims, Plaintiff correctly notes that the immunity conferred by the PSTCA extends only to suits seeking monetary relief and does not apply to suits that seek equitable relief, such as an injunction. (*Id.* at 18); *DiSalvio v. Lower Merion High Sch. Dist.*, 158 F. Supp. 2d 553, 564 (E.D. Pa. 2001) (citing *Centennial Sch. Dist. v. Independence Blue Cross*, 885 F. Supp. 683, 689 (E.D. Pa. 1994)). Thus, to the extent that the Court finds the Township immune under the PSTCA, those claims are only dismissed to the extent that Plaintiff seeks monetary damages.

Under the PSTCA, "no local agency[13] shall be liable for any damages on account of an injury to a person or property caused by any act of the local agency or any employee thereof[,]" unless the action falls under one of eight enumerated exceptions to immunity. 42 Pa.C.S. § 8541 *et seq.* Plaintiff submits that its claims fall into the "care, custody or control of personal property" exception set forth at 42 Pa.C.S.A. § 8542(b)(2) which provides:

> [t]he care, custody or control of personal property of others in the possession or control of the local agency. The only losses for which damages shall be recoverable under this paragraph are those property losses suffered with respect to the personal property in the possession or control of the local agency.

42 Pa. C.S. § 8542(b)(2).

The enumerated exceptions provide for potential liability if the following conditions are met: (1) the damages alleged are otherwise recoverable under common law or statute;[14] (2) an injury was caused by a negligent act of a local agency or employee acting within the scope of his official duties; and (3) the negligent act of the local agency falls within one of the eight

---

[13] Plaintiff does not dispute that the Township is a local agency.
[14] Other than asserting that Pennsylvania does not recognize a claim for civil aiding and abetting, the Township does not dispute that Plaintiff's damages are recoverable under common law or statute. The Court addresses the aiding and abetting claim, *infra*.

enumerated categories. 42 Pa.C.S. § 8542; *Repko v. Chichester Sch. Dist.*, 904 A.2d 1036, 1040 (Pa. Commw. Ct. 2006). Because the legislative intent of the PSTCA is to insulate political subdivisions from liability, the exceptions to immunity are to be interpreted narrowly. *Mascaro v. Youth Study Ctr.*, 523 A.2d 1118, 1123 (Pa. 1987*); see also Love v. City of Phila.*, 528 A.2d 531, 532 (Pa. 1988).

Plaintiff claims that the escrow funds held by the Township were its personal property in the possession and control of the Township, because it was not permitted to have any discretion in the disbursement of the funds. (Docket No. 43 at 19). The PSTCA does not define personal property; however, courts have found that it encompasses "everything that is the subject of ownership, not coming under the denomination of real estate." *Klingner v. Pocono International Raceway, Inc.*, 433 A.2d 1357, 1361 (Pa. Super. Ct. 1981). As noted by Plaintiff, the Commonwealth Court has explained that, "under the appropriate circumstances, the negligent undertaking of a fiduciary duty on the part of a governmental agency with respect to a loan fund—clearly a res constituting personal property—could give rise to a cause of action in tort." *Rousseau v. City of Philadelphia*, 514 A.2d 649, 652 (Pa. Commw. Ct. 1986). Moreover, it has defined "control" as denoting that a "person has some power over the actual property, *i.e.*, to authorize transactions involving the property or to make disbursements." *Borough of W. Fairview v. Hess*, 568 A.2d 709, 715 (Pa. Commw. Ct. 1989), *superseded on other grounds by rule as stated in Muth v. Ridgway Twp. Mun. Auth.*, 8 A.3d 1022 (Pa. Commw. Ct. 2010). Thus, the Court finds that Plaintiff's negligence claim against the Township may proceed.

To the extent that Plaintiff argues that the Township is liable for the negligent supervision of Wargo, the record is presently insufficient to make such a finding.[15] Accordingly, at this stage, the Court does not find the Township to be immune under the PSTCA for the negligence claim.

The PSTCA provides that, while municipal employees are not immune for their willful and wanton acts pursuant to § 8550,[16] the agency's immunity is not so abrogated. *Williams v. Cty of Chester*, 2015 WL 224384, at *3 (E.D. Pa. Jan. 15, 2015) (citing *Smith v. Cty of Chester*, 851 F.Supp. 656, 659 (E.D. Pa. 1994) (same)). Plaintiff provides no authority or argument to overcome the Township's immunity as to the fraud claim. Similarly, the breach of fiduciary duty and civil conspiracy claims do not fall within one of the PSTCA exceptions. *Hankin Family P'ship v. Upper Merion Twp.*, 2012 WL 43599, at *17 (E.D. Pa. Jan. 6, 2012) (citing *Schlichter v. Limerick Twp.*, 2005 WL 984197 (E.D. Pa. Apr. 26, 2005) (civil conspiracy)); *Ortega* 2015 WL 337394, at *10; *Shadie v. Forte*, 2011 WL 607447, at *7 (M.D. Pa. Feb. 15, 2011) (breach of fiduciary duty). Thus, to the extent that Plaintiff seeks monetary damages against the Township, the fraud, civil conspiracy, and breach of fiduciary duty claims are dismissed, with prejudice.

Turning to the conversion claim, it is not settled that such a claim is an intentional tort in Pennsylvania. *Conner v. Borough of Eddystone, Pa.*, 2015 WL 1021363, at *6 (E.D. Pa. Mar. 6,

---

[15] The Court points out that, while these cases are not factually similar to the issue at hand, other courts have expressly made clear that negligent supervision does not fall within any of the exceptions to immunity under the PSTCA. *Davis v. Corizon Health, Inc.*, 2015 WL 518263, at *3 (E.D. Pa. Feb. 9, 2015) (citing *Clark v. Southeastern Pennsylvania Transp. Auth.*, 691 A.2d 988, 992 (Pa. Commw. Ct. 1997) (holding that a claim of negligent supervision does not fall within any of the PSTCA)); *Ortega v. Roulhac*, 2015 WL 337394, at *9 (E.D. Pa. Jan. 22, 2015) (finding that the PSTCA barred plaintiff's vicarious liability claim against the defendant school district).

[16] Section 8550 provides:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 Pa.C.S. § 8550.

2015) (citing *L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard, Inc.*, 777 A.2d 1090, 1095 (Pa. Super. Ct. 2001) ("[T]he tort of conversion does not rest on proof of specific intent to commit a wrong.")). Further, Plaintiff has pled that the escrow funds were solely in the "care, custody or control" of the Township. 42 Pa.C.S. § 8542(b)(2). For these reasons and finding that discovery is required for this Court to make such a determination as to whether specific intent was present here, the Court rejects the Township's argument that it is immune to the conversion claim at this stage of the proceedings. *See Conner*, 2015 WL 1021363, at *6 (permitting Plaintiff to amend its conversion count depending on how the subject pension funds were held by the defendant borough).

In sum, the Court finds that the Township is immune from Plaintiff's breach of fiduciary duty, fraud, and civil conspiracy claims to the extent monetary damages are sought. The Court proceeds to address the remainder of Defendants' arguments for dismissal of the state law claims.

### 2. Negligence

The Court has already determined that the Township is not immune from a negligence claim. Other than alleging that the Court does not have federal question jurisdiction and thus it cannot exercise supplemental jurisdiction in this matter, Defendants do not move to dismiss the negligence count. The Court has federal question jurisdiction over the § 1983 claims and thus maintains its supplemental jurisdiction over this and the other remaining state law claims.

### 3. Fraud / Conspiracy to Defraud

The Township Defendants move for dismissal of the fraud claim on the basis that Plaintiff was aware that the invoices and reports at issue were fraudulent, and thus cannot show

justifiable reliance.[17] (Docket No. 33 at 20-22). Plaintiff argues that, under Rule 12(b)(6), the standard is whether it adequately pled the necessary elements of fraud. (Docket No. 43 at 20-21). In Pennsylvania, those elements are:

> (1) a representation;
> (2) which is material to the transaction at hand;
> (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;
> (4) with the intent of misleading another into relying on it;
> (5) justifiable reliance on the misrepresentation; and
> (6) the resulting injury was proximately caused by the reliance.

*Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1185 (Pa. Super. Ct. 2005) (citations omitted).

As the parties are aware, the Court has already dismissed the RICO claims, which were based on the predicate acts of mail and wire fraud. (Docket No. 59). The Court pointed out that the "Amended Complaint overwhelmingly establishes that, despite its suspicion and actual knowledge of Defendants' alleged 'fraud,' [Plaintiff] continued to transact with the Defendants." (Docket No. 59 at 10) (citing Docket No. 28, *passim*). The Court found that Plaintiff failed to "allege the requisite deceit." (*Id.*). While the Court held that the fraud alleged in the Amended Complaint did not rise to a RICO claim, Plaintiff has sufficiently pled a cause of action for common law fraud.

Here, Plaintiff avers that Wargo and/or the Township instructed Swansinger to inflate and/or falsify invoices, causing Plaintiff to incur damages for payment of same. (Docket No. 28 at ¶¶ 214-38). It also alleges that the Township actively concealed the fraud. (*Id.* at ¶ 226). The Defendants' representations that the invoices were accurate were certainly material to the transaction and were made with knowledge of the falsity of the invoices and the intent of

---

[17] The HRG Defendants concede that Plaintiff "has pleaded the elements of a simple case of fraud." (Docket No. 37 at 2). Accordingly, this claim remains as to those Defendants.

misleading Plaintiff. (*Id.* at ¶¶ 214-238). Further, Plaintiff justifiably relied on the misrepresentation that its inspections were being conducted with the same frequency as other developments. (*Id.* at ¶ 233). Lastly, this conduct proximately caused Plaintiff to continue to fund the escrow account and incur expenses related to the Della Strada development. (*Id.* at ¶ 234). Given these allegations, the Court finds that Plaintiff has adequately pled the elements for fraud. Accordingly, the Township's motion to dismiss the fraud claim is denied.

### 4. Breach of Fiduciary Duty

The Township Defendants next argue that the escrow accounts in the present case do not impose a fiduciary duty on the parties. (Docket No. 33 at 22-23). They also claim that HRG was the eventual grantee/transferee of the escrow account, as funds from the accounts were used to pay HRG for inspections and reports. (*Id.* at 23). Thus, as HRG was not a party to the agreements creating the accounts, the SDA and ECA, an escrow agreement was not created. (*Id.*).

Plaintiff maintains that it had a fiduciary relationship with the Township Defendants vis-à-vis the escrow accounts for Della Strada Phase 1 inspection fees and Della Strada Phase 2 review fees. (Docket Nos. 42 at ¶ 99, 43 at 25-27). The SDA provides:

> [in] order to secure its obligations to so reimburse the Township, the Developer, may elect to post with the Township cash escrow account in an amount estimated by the Township Engineer, to cover all such engineering fees and expenses. . . If the account is exhausted prior to payment of all such fees and expenses, it shall be replenished in an amount originally deposited or such lesser amount as may be deemed reasonable by the Township Engineer. Any funds remaining in the account after payment of all such fees and expenses shall be promptly returned to the Developer.

(Docket No. 28-1 at 21). In the ECA, the parties agreed that:

> Owner agrees to place into an escrow account, for the sole benefit of the Township, as Escrow Agent and escrowee, an initial sum of not less than Five Thousand Dollars ($5,000.00) restricted to secure the inspection, repair, maintenance, operation, replacement,

> reconstruction and/or elimination of any component, part, or all of the Facilities during the term of this Agreement . . .
>
> Owner agrees that the Sediment Basin and Storm Water Maintenance and Monitoring Escrow Amount shall be used to reimburse the Township for any and all expenses, fees and charges incurred by the Township for the inspection, provided that said inspections shall be conducted in the same manner and frequency as similarly situated developments located within the Township, repair, maintenance, operation, replacement, reconstruction and/or elimination of any component, part, or all of the Facilities. . .
>
> The Township shall have the sole discretion when or if, the funds in the Sediment Basin and Storm Water Maintenance and Monitoring Escrow Account are released to the Owners.

(Docket No. 28-2 at 6-7).

As an initial point, a fiduciary duty may arise from a contract. *McDermott v. Party City Corp.*, 11 F. Supp.2d 612, 626 n. 18, 627 (E.D. Pa. 1998). "An ordinary escrow agreement creates a fiduciary relationship between the agent [the depository institution] and the transferor." *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 347 (3d Cir. 2004) (quoting *Knoll v. Butler*, 675 A.2d 1308, 1312 (Pa. Commw. Ct. 1996). The relevant portions of the ECA and SDA, quoted above, demonstrate the Township Defendants' duty to Plaintiff to act in a fiduciary capacity with respect to the escrow accounts. (Docket Nos. 28-1 at 21, 28-2 at 6-7).

Further, the Amended Complaint alleges that Wargo, as an agent of the Township, intentionally and willfully breached his fiduciary duty to Plaintiff by, *inter alia*, concealing the fraudulent or false HRG invoices, improperly withholding said invoices, and falsifying escrow activity statements. (Docket No. 28 at ¶ 335). Plaintiff charges that Wargo improperly, intentionally, and willfully charged and paid for false and/or fraudulent Phase 1 and 2 invoices to retaliate against Plaintiff. (*Id.*).

Plaintiff asserts that such conduct resulted in significant financial harm and also harmed its business relationship with NVR, Inc. d/b/a Ryan Homes. (*Id.* at ¶ 337). Taking these allegations as true, Plaintiff has sufficiently pled a breach of fiduciary duty claim.

### 5. Conversion

The Township Defendants argue that the conversion claim must be dismissed because Plaintiff did not have an immediate right to possess its money in the escrow account at the time it was allegedly converted. (Docket No. 33 at 23-24). Plaintiff maintains that Defendants may be liable for conversion if it demonstrates that Defendants disbursed the escrow funds in a manner inconsistent with the escrow agreement. (Docket No. 43 at 27).

Conversion is defined in Pennsylvania as "the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." *Shonberger v. Oswell*, 530 A.2d 112, 114 (Pa. Super. Ct. 1987) (citing *Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964)). Money may be a chattel for the purposes of conversion in Pennsylvania. *Id.* (citing *Pearl Assurance Co. v. National Ins. Agency*, 30 A.2d 333, 337 (Pa. Super. Ct. 1943). To be so considered, the funds must be in some way "identifiable." *Pioneer Commercial Funding Corp. v. Am. Fin. Mortgage Corp.*, 855 A.2d 818, 827, n.21 (Pa. 2004). There are a number of ways that funds can be identified, including by description or segregation from other funds. *In re Zambrano Corp.*, 2010 WL 8354694, at *6 (Bankr. W.D. Pa. Aug. 24, 2010). But, however they are identified, there must be "an obligation on the part of the defendant to return the specific coin or notes [e]ntrusted to his care." *Alexander & Co. v. Goldstein*, 13 Pa. Super. 518, 522 (Pa. Super. Ct. 1900) (emphasis added).

The requisite intent to establish a conversion claim is the exercise of dominion or control over the goods inconsistent with the plaintiff's rights. *Shonberger*, 530 A.2d at 114. (citations omitted). As pointed out by Plaintiff, courts have found that an escrow agent may be liable for

conversion "if he or she delivers the funds subject to the escrow agreement in a manner inconsistent with that agreement." *Frenkel v. Baker*, 2014 WL 5697449, at *5 (E.D. Pa. Nov. 4, 2014) (citing *Samango v. Pileggi*, 526 A.2d 417, 421–22 (Pa. Super. Ct. 1987)). Given same and construing the Amended Complaint's allegations in the light most favorable to Plaintiff, the Court finds a conversion claim has been adequately pled.

### 6. Unjust Enrichment

The Township Defendants argue that Plaintiff's unjust enrichment claim should be dismissed because two contracts already exist between the parties, *i.e.* the SDA and ECA. (Docket No. 33 at 24-25). Plaintiff points out that the Defendants expressly deny a valid escrow agreement, especially with regard to the HRG Defendants. (Docket No. 43 at 27-28). Further, it submits that it is premature to dismiss such a claim at this stage, as it is permitted to plead, in the alternative. (*Id.* at 28). The Court agrees.

Unjust enrichment is shown by "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Filippi v. City of Erie*, 968 A.2d 239, 242 (Pa. Commw. Ct. 2009) (citing *Wiernik v. PHH U.S. Mortgage Corp.*, 736 A.2d 616, 622 (Pa. Super. Ct. 1999), *appeal denied*, 751 A.2d 193 (Pa. 2000)). Here, Plaintiff has alleged that it paid Defendants for Swansinger's excessive and/or fraudulent bills. (Docket No. 28 at ¶¶ 224, 229-31). It has further claimed that it requested certain invoices from the Township Defendants, but they withheld them and fabricated escrow activity statements to support HRG's retention of said fees. (*Id.* at ¶¶ 230-31). Accordingly, the Court finds that Plaintiff has sufficiently pled a claim for unjust enrichment and now addresses Defendants' argument that this claim is precluded by the SDA and ECA.

It is well-established in Pennsylvania that, where an express contract exists which governs the rights and liabilities of the parties, a claim for unjust enrichment is precluded. *See Schott v. Westinghouse Elec. Corp.*, 259 A.2d 443, 448 (Pa. 1969) ("[T]his Court has found the quasi-contractual doctrine of unjust enrichment inapplicable when the relationship between parties is founded on a written agreement or express contract."); *see also Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987) (citations omitted). However, plaintiffs may plead an unjust enrichment claim in the alternative with a breach of contract action where there is some dispute as to whether a valid, enforceable written contract exists. *See Montanez v. HSBC Mortgage Corp. (USA)*, 876 F. Supp.2d 504, 516 (E.D. Pa. July 17, 2012); *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 527 (E.D. Pa. Jan. 27, 2012); *AmerisourceBergen Drug Corp. v. Allscripts Healthcare, LLC*, 2011 WL 3241356, at *3 (E.D. Pa. July 29, 2011). Additionally, the Court notes that Plaintiff's allegations may be outside the scope of the ECA and SDA.

In light of permissive alternate pleading under Rule 8 and taking Plaintiff's allegations as true, clearly there is a dispute as to whether a valid escrow agreement exists between the parties. Thus, Plaintiff's unjust enrichment claim cannot be dismissed at this stage.

### 7. Aiding and Abetting

The Township Defendants' sole argument for the dismissal of Plaintiff's aiding and abetting claim is that such a claim does not exist in Pennsylvania. (Docket No. 33 at 25). In response, Plaintiff correctly notes that this Court has previously predicted that Pennsylvania would recognize a cause of action for aiding and abetting the tortious conduct of another in accordance with § 876(b) of the Second Restatement of Torts. *Panthera Rail Car LLC v. Kasgro Rail Corp.*, 2013 WL 4500468, at *9 (W.D. Pa. Aug. 21, 2013). Given same, the Court denies the Township Defendants' Motion to Dismiss on this basis.

### 8. Gist of the Action Doctrine

In a footnote, the Township Defendants argue that Plaintiff's fraud, breach of fiduciary duty, conversion, and unjust enrichment claims must be dismissed because they arise out of the parties' contracts and are thus barred by the "gist of the action" doctrine. (Docket No. 33 at 25, n.6). Plaintiff correctly claims that such a determination is inappropriate at this stage. (Docket No. 43 at 27).

Under the "gist of the action" doctrine, a plaintiff cannot maintain a tort claim where it is essentially identical to a breach of contract action. *Etoll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002). Courts in the Third Circuit caution against deciding whether the gist of the action is a contract or tort at the motion to dismiss stage. *See, e.g. Always in Serv., Inc. v. Supermedia Servs.–E., Inc.*, 2012 WL 717233, at *8 (E.D. Pa. Mar. 5, 2012); *Weber Display & Packaging v. Providence Washington Ins. Co.*, 2003 WL 329141, at *3 (E.D. Pa. Feb. 10, 2003); *Caudill Seed & Warehouse Co. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 834 (E.D. Pa. 2000) *on reconsideration in part sub nom. Caudill Seed & Warehouse Co.. v. Prophet 21, Inc.*, 126 F. Supp. 2d 937 (E.D. Pa. 2001). Moreover, a "certain tension exists, at the motion to dismiss stage, between Pennsylvania's gist of the action doctrine and Rules 8(d)(2) and (3) of the Federal Rules of Civil Procedure, which expressly condone pleading in the alternative." *Am. Auto. Ins. Co. v. L.H. Reed & Sons, Inc.*, 2015 WL 1566224, at *3 (M.D. Pa. Apr. 8, 2015). Despite its potential applicability at later stages of these proceedings, the Court declines to dismiss Plaintiff's claims on a gist of the action theory at this time.

## V. Conclusion

Upon consideration of the Amended Complaint and the parties' arguments, the Court finds that the Township is immune from the breach of fiduciary duty, fraud, and civil conspiracy claims to the extent that Plaintiff seeks monetary damages for same. The Court denies

Defendants' Motions as to the remaining constitutional and state law claims. An appropriate Order follows.

Dated: April 17, 2015

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc/ecf: All counsel of record.